IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

ANTHONY PETERSON                                                                    MOVANT

v.                                                                              No. 2:06CR91-M

UNITED STATES OF AMERICA                                                        RESPONDENT

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Anthony Peterson to vacate, set aside, or correct his sentence imposed under the court's December 15, 2006 judgment. In that judgment, Peterson pled guilty to possession of child pornography through interstate commerce by means of a computer under 18 U.S.C. §2252A(a)(5)(B) and 2256(8)(A). The government has responded to the motion, and Peterson has elected not to reply. The matter is ripe for resolution. For the reasons discussed below, the motion to vacate, set aside, or correct Peterson's sentence shall be denied.

**Facts and Procedural Posture**

Anthony Peterson met a minor female ("K.G.") as a cheer coach in Las Vegas, Nevada. (November 30, 2006, Sentencing Transcript, p. 10). Concerned over Peterson's pursuit of their daughter and his constant phone calls (when K.G. was fifteen years old), K.G.'s parents asked Peterson to not see their daughter on multiple occasions. *Id*. at 26, 30. Although Peterson agreed not to contact K.G. further, he nonetheless did so immediately. *Id*. at 30. K.G.'s family, at least in part to remove their daughter from Peterson's influence, moved from Nevada to Mississippi. *Id*. at 27. Peterson continued to pursue K.G. On one occasion, K.G.'s mother spotted Peterson and K.G. exiting a Mississippi hotel. *Id*. On September 27, 2006, in an internet chat between

Peterson and K.G., Peterson asked for and received pornographic images of K.G..[1]

On May 24, 2006, in a three count indictment movant Anthony Peterson was charged with two counts of using and coercing a minor to create child pornography and one count of causing the minor ("K.G.") to ship the child pornography across state lines from Mississippi to Nevada (Court Record, pp.1-3).

Following his arrest, Peterson was placed on supervision by the U.S. Probation Service, limiting his use of the internet, cellular phones, and unsupervised contact with minors (Court Record, p. 34). Peterson filed a motion for pretrial hearing (Court Record, pp. 64-67) and a motion to amend the supervision conditions to allow him to contact K.G. after she reached eighteen years of age (Court Record, pp. 80-83). The government filed a motion to introduce evidence of Peterson's history of inappropriate conduct with minors, under Rule404(b), Federal Rules of Evidence, including one event occurring during his court supervised pretrial release (Court Record, pp. 84-97).

The court granted Peterson's motion for a pretrial hearing and heard argument and evidence on pretrial motions (August 23, 2006, Pretrial Hearing Transcript). After hearing evidence of Peterson's violation of terms of his supervised release, the court revoked his supervised release and remanded him to the custody of the U.S. Marshal Service (August 23, 2006, Pretrial Hearing Transcript, pp 58-59).

Following the pretrial hearing, Peterson waived indictment and venue and entered a plea of guilty to possession of images of child pornography under count one of the information, a charge carrying a maximum term of ten years. The court examined Peterson on the record to

---

[1] See Government Exhibit 1, Hearing Exhibits, 12/13/2006.

determine that the guilty plea was voluntary – and that he appreciated and understood the statutory penalties he faced as a result of his plea. (August, 23, 2006, Waiver of Indictment, Waiver of Venue, Plea Transcript, pp. 9-10, 12). The court also informed Peterson about advisory federal sentencing guidelines and the court's ability to impose a sentence different from that set forth in the guidelines (Plea Transcript, p. 13). The court scheduled sentencing for November 30, 2006.

After the initial sentencing hearing, the court informed the parties it would consider an upward departure from the guidelines in order to impose a sentence consistent with Title 18, United States Code, Section 3553(a)(West 2000 & Supp. 2007). The court announced that it would consider an upward departure "to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct; [and] most importantly, to protect the public." (November 30, 2007, Sentencing Transcript, pp. 35-36). The court then provided opportunity for the parties to file memoranda regarding an upward departure and reset the sentencing hearing for December 23, 2006. (Court Record, p. 113).

Over the course of both sentencing hearings, the defense called Peterson himself, K.G., and an adult friend of Peterson's, Mrs. Casey. The government called as witnesses FBI Agent Flaherty, K.G.'s parents, and Mr. Carver, the owner of one of the cheer academies where Peterson had previously been employed in Lubbock, Texas.

The prosecution called Michael Carver, owner of Extreme Cheer and Dance and former employer of Anthony Peterson, to testify about allegations of four distinct incidents brought to Mr. Carver's attention. The first incident involved a fifteen-year-old girl. According to allegations brought to Mr. Carver's attention, including a discussion with the girl in question,

Peterson had sex with the fifteen-year-old on multiple occasions over a period of three months. (December 13, 2006, Sentencing Transcript, p. 6). Mr. Carver terminated Peterson's employment after discovering the sexual relationship with the young girl. *Id*. at 8. In August 2002, following this discovery and Peterson's termination, Mr. Carver held a meeting with parents to discuss the situation. *Id.* After this meeting, three girls and their parents reported other incidents of inappropriate contact to Mr. Carver. *Id*. In the first incident, Peterson took a nine-year-old girl to his home and tried to kiss her. *Id*. at 9. In the second incident Peterson grabbed an eleven-year-old girl in the crotch while he was chaperoning a bus trip to a cheer competition. *Id*. In the third incident (occurring on the same bus trip), a nine-year-old girl reported to Mr. Carver that Peterson attempted to "go inside of her shorts" while she was sitting on his lap. *Id*.

Following Mr. Carver's testimony, Agent Flaherty testified about her investigation of an incident in Las Vegas – an incident that occurred *during* Peterson's pretrial supervised release – and resulted in the revocation of supervised release. In an internet chat between K.G. and a friend, the friend described what would easily constitute a sexual assault or attempted rape by Peterson of a fourteen-year-old girl.[2] Following this chat as a lead, Agent Flaherty interviewed the 14 year old girl. *Id*. at 16. Agent Flaherty testified that the girl "relayed a very similar story" to that contained in the chat. *Id*. at 17-18.

Upon review of the evidence presented during sentencing, the court found that Peterson "committed other acts" by a preponderance of the evidence and that the evidence was reliable. *Id*. at 61. The court announced Peterson's sentence of ten years, the statutory maximum, which

---

[2]See Government Exhibit 1, Hearing Exhibits, 8/23/2006

was outside the advisory guidelines. *Id*. at 58, 61. The court held that the sentence imposed was necessary under Section 3553(a) in order to reflect the nature and circumstances of the offense, the history and characteristics of the defendant, to reflect the seriousness of the offense, provide for just punishment, to afford adequate deterrence, and to protect the public. *Id*. at 59. The court set forth in detail how these factors led to the imposition of the maximum sentence in this case. *Id*. at 58-61.[3]

The Fifth Circuit Court of Appeals affirmed the sentence as reasonable, noting that the sentencing court used the advisory guidelines range as a reference, gave detailed reasons why it was imposing a non-Guidelines sentence, and specifically referenced the Section 3553(a) factors. *United States v. Peterson*, 260 Fed.Appx. 753, 755-756 (5th Cir. 2008). The Fifth Circuit further observed that the district court found Peterson had "committed other acts" by a preponderance of evidence, justifying the upward departure, and that the district court found the evidence of other acts to be reliable. *Id*. at 756. The Fifth Circuit rejected Peterson's claim that the sentencing court had not explained its reasoning for the guideline departure, noting that the court gave many detailed reasons for its upward departure. *Id*. at 755. The Fifth Circuit also held that "[t]he district court's consideration of hearsay testimony was permissible." *Id*. at 755.

On January 5, 2008, Peterson filed a motion to vacate, set aside, or correct the sentence imposed under the court's December 15, 2006 judgment. The government responded. Peterson elected not to reply.

---

[3]See Appendix

## Anthony Peterson's Claims Under 28. U.S.C. § 2255

Anthony Peterson states four grounds for habeas corpus relief in his petition, which the court has restated below in the interest of brevity and clarity:

1. Counsel was ineffective for failing to dissuade the court from its upward departure of his sentence and that the sentence was unreasonable and contrary to law.

2. Counsel was ineffective for failing to dissuade the court from considering hearsay evidence of prior acts during sentencing, and the hearing of this evidence was contrary to law.

3. The government committed prosecutorial misconduct by having FBI Special Agent Sue Flaherty testify about Peterson's conduct with a fourteen year old in Las Vegas, which the court considered in departing upward from the guideline sentence.

4. Counsel was ineffective by not calling two witnesses who could attest to Peterson's innocence concerning Peterson's conduct with a fourteen year old in Las Vegas, which the court considered in the departing upward from the guideline sentence.

## Ineffective Assistance of Counsel

Under the *Strickland* test for ineffective counsel, a federal convict seeking relief under 28 U.S.C. § 2255 must show that (1) his counsel's performance was deficient and (2) the deficient performance resulted in actual prejudice. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To establish deficient performance under the first prong, the petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Id*. At 688. In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. A court must make "every effort . . . .to eliminate the distorting effects of hindsight." *Id*. To establish prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id*. at 694.

Peterson's § 2255 motion does not meet either prong of the *Strickland* test. He has not provided a *single* fact which supports his contention of ineffective counsel with respect to Grounds One and Two in his petition. Instead, he has repeated substantive arguments heard and rejected on direct appeal, then labeled them as ineffective assistance of counsel claims. To the extent Peterson is rearguing substantive claims heard and rejected by the Fifth Circuit, those claims are barred. *See U.S. v. Kalish,* 780 F.2d 506, 508 (5th Cir. 1986)("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions").

Peterson re-urges claims that have been raised and rejected on appeal, such as objections of hearsay testimony and the reasonableness of his sentence. However, the Fifth Circuit affirmed the sentence as reasonable. *United States v. Peterson*, 260 Fed.Appx. 753, 755-756 (5th Cir. 2008). The Fifth Circuit further found that "[t]he district court's consideration of hearsay testimony was permissible." *Id*. at 755. Thus these claims are not appropriate grounds for a § 2255 motion.

To the extent Peterson is arguing that he received ineffective assistance of counsel with respect to those substantive arguments already disposed of on appeal, those claims also fail. As the sentence and admission of evidence have both been determined lawful by the Fifth Circuit, this court cannot now hold that Peterson's counsel was ineffective for failing to convince the court otherwise. *See. e.g., United States v. Kimler,* 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had

the attorney raised the issue."). Peterson's trial counsel raised some of the same concerns Peterson does in the present motion. For example, counsel objected to witness testimony at sentencing as hearsay. (December 13, 2006, Sentencing Transcript, p. 6). Counsel was overruled. *Id*. at 6. The Fifth Circuit upheld that hearing of evidence on direct appeal: "The district court's consideration of hearsay testimony was permissible." *Peterson* at 755. Unfortunately for Peterson, his problem rests not with his counsel's competency but with the law itself. Failure to raise an unmeritorious claim is not deficient performance of counsel; nor is the court's decision to overrule an objection not supported in the law. Accordingly, Peterson's claims under Grounds One and Two are without merit and shall be denied.

Peterson alleges in Ground Four of his petition that his counsel was aware of two witnesses who could attest to his innocence regarding the incident in Las Vegas, Nevada with a fourteen-year-old girl. Claims based on uncalled witnesses are "disfavored" as a basis for ineffective assistance claims under *Strickland*. *See United States v. Harris*, 408 F. 3d 186, 190 (5th Cir.), *cert. denied*, 545 U.S. 919 (2005). Moreover, Peterson's claim of ineffective counsel based on uncalled witnesses is merely conclusory in nature and thus does "not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983) citing *Schlang v. Heard,* 691 F.2d 796, 798 (5th Cir. 1982)(collecting cases). Peterson does not provide the names of the witnesses, what their testimony might have been, or how his counsel's rejection of these witnesses was an unreasonable trial strategy under *Strickland*.

Finally, Peterson has not shown how counsel's decision to forego these witnesses resulted in prejudice to Peterson's defense under *Strickland's* second prong. As discussed previously, Peterson violated the terms of his pretrial supervised release, even if his actions did not rise to the

level of attempted rape or sexual assault. Thus, even if the uncalled witnesses could establish Peterson's innocence of attempted rape or sexual assault, he nonetheless violated his supervised release by having unsupervised contact with minors. An egregious violation of supervised release is certainly relevant whether the sentence imposed promotes respect for the rule of law, provides for adequate deterrence, and protects the public – all enumerated factors under Section 3553(a).

Further, the Las Vegas incident was not the only evidence of relevant conduct revealed during sentencing. Mr. Carver's testimony regarding four separate incidents of inappropriate contact with minors as young as nine years old was devastating to Peterson's position. (December 13, 2006, Sentencing Transcript, pp. 5-10). Given the nature of these four separate incidents, the testimony regarding the Las Vegas incident with the fourteen-year-old is simply superfluous. Peterson has thus failed to demonstrate either prong of *Strickland,* and his final claim for ineffective counsel is without merit and shall be denied.

**Prosecutorial Misconduct**

Peterson has raised a claim of prosecutorial misconduct in the present motion, but did not do so at trial or on direct appeal. This claim is therefore barred under the doctrine of procedural default. A defendant may "not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). However, the bar does not apply to issues that could not have been raised on direct appeal, such as ineffective assistance of counsel. *See United States v. Pierce*, 959 F. 2d 1297, 1301 (5th Cir.) *cert. denied*, 506 U.S. 1007 (1992). Peterson has not explained why this claim was not raised during trial or on direct appeal. Accordingly, his claim for prosecutorial misconduct is barred for failure to show cause for his

procedural default.

Even if the court considered the substantive claim, an analysis of that claim quickly reveals it is without merit. Peterson states that the prosecution misled the court in its presentation of evidence, which this court interprets as a claim that the prosecution knowingly presented false testimony. In order for Peterson to obtain relief based on a claim that the government "knowingly introduced false testimony, [Peterson] bears the burden of establishing that the evidence was false, that the false testimony was material, and that the prosecution offered the testimony knowing it to be false." *Chambers v. Johnson,* 218 F.3d 360, 363 -364 (5th cir. 2000) citing *Giglio v. United States,* 405 U.S. 150, 153-154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Schlang v. Heard,* 691 F.2d 796, 799 (5th Cir. 1982). Once again, Peterson has presented no evidence to meet the requisite legal burden. "[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983) citing *Schlang v. Heard,* 691 F.2d 796, 798 (5th Cir. 1982)(collecting cases). Peterson's claim of prosecutorial misconduct is therefore without merit.

In addition, Peterson argues in Ground Three that evidence of an ongoing investigation cannot be used at trial, though he does not explain where this prohibition may be found. Peterson appears to rely on a hearsay or due process objection to the testimony, objections considered and rejected on direct appeal to the Fifth Circuit. Thus this claim is not a proper basis for a § 2255 motion. As the evidence in question has been determined to be admissible by the Fifth Circuit on direct appeal, Peterson's claim to the contrary in this post-conviction collateral proceeding is without merit and shall be denied.

Finally, Peterson did not request an evidentiary hearing, and this court finds one

unnecessary. For each of his claims Peterson has either (1) failed to allege any conduct that would demand relief if proved or (2) failed to give sufficient support for his claims. Instead, he makes unsubstantiated and conclusory assertions unsupported by the record. Accordingly, the court finds an evidentiary hearing unnecessary.

In sum, for the reasons set forth above, the instant motion by Anthony Peterson to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 shall be denied. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 13th day of July, 2009.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI**

**Appendix: Sentencing Transcript & Application of § 3553(a) Factors**

I have gone carefully over your history. It appears that you entered Texas Tech in Lubbock, Texas, in 1995 and went to school there until 2003 when you were placed on scholastic suspension as a senior with a 1.704 grade point average. In your employment, you worked at Rico's Black Belt Academy in Henderson, and you were a security officer at Summerland Hospital. You also worked for Old Navy, A & J All Stars, Extreme Cheer, and the Disney Store in Lubbock, Texas. Most of these places of employment, I suspect, gave you an opportunity to be around children.

I h ave heard the evidence that was presented. I have listened to everyone who's been presented on either side. In your case, I think certain aggravating circumstance are before the Court which have been established by a preponderance of the evidence sufficient to lead this Court to believe that the aggravating circumstances supported by the facts are reliable and believable by this Court and that you quite likely did what the other witnesses have said you did.

Specifically, in July of 2004, when Mrs. Green, I believe, learned that you had had inappropriate contacts with her daughter, she went to the gym and talked to you and told you to leave her alone. You did not do that. You continued to contact this minor child. That was illegal.

The family later moved to Mississippi, among other reasons, to get away from you. You were not satisfied with that. You continued to contact her. You pursued her to Mississippi. You were found, at one time, in a hotel room with her. That indicates to me that you have little respect for the rights of others. You have no respect for that family. The damage you have done is probably irreparable.

As to the nature and circumstances of the offense, I don't have to say much more than it is child pornography. You participated in it; you encouraged it. The comments you made on the

internet indicate to me that you are degraded. It shows a depraved personality. It is simply astonishing that you would have continued to contact this young lady even after an order was entered telling you not to be in contact with any minors

As to the seriousness of your offense, you have no respect for this Court. You have violated prior orders of the Court. The witness, I believe, was Mr. Carver from Texas who came up and testified about your inappropriate contact, would be about the cleanest way to put it, with children under you care when you were a chaperone. That is simply unacceptable in society. That witness was absolutely believable. You have focused your attempts – you have focused on minors throughout your history, that I know of; and it's about all I know of.

The sentence must reflect adequate deterrence. Someone has a duty to protect the children of society, and sometimes it becomes the Court's responsibility to do that when others will not or cannot. And to the extent that I can deter your future conduct, I intend to.

That have been said, these witnesses today and the prior witnesses presented in this cause at the other hearings we have had lead this Court to find by a preponderance of the evidence that you have committed other acts which require me or authorize me to go outside of the guidelines in this case. The proof that has been presented has been reliable. So therefore, I am sentencing you above the guideline range.

December 13, 2006, Sentencing Transcript, pp. 58-61.